*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0017P (6th Cir.)
File Name: 03a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

SEAN CARTER,
    *Defendant-Appellant.*

No. 01-5338



Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00058—Henry R. Wilhoit, Jr., District Judge.

Submitted: April 23, 2002

Decided and Filed: January 15, 2003

Before: KRUPANSKY and BOGGS, Circuit Judges;
LAWSON, District Judge.*

————————————

## COUNSEL

**ON BRIEF:** Robert L. Abell, Lexington, Kentucky, for
Appellant. Charles P. Wisdom, Jr., Ron L. Walker, Jr.,

————————————————————

*The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

1

ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in which BOGGS, J., joined. LAWSON, D. J. (pp. 14-22), delivered a separate dissenting opinion.

————————

## OPINION

————————

KRUPANSKY, Circuit Judge. By way of appeal from his conditional guilty plea, Defendant-Appellant Sean Carter has challenged the district court's refusal to suppress evidence gained as a result of a warrantless search of his hotel room.

On March 21, 2000, in Lexington, Kentucky, law enforcement officials used a confidential informant to purchase "crack cocaine" from a "crack house." The confidential source informed the law enforcement officials that Carter and Calvin Eugene Holliday were in the process of leaving the crack house to obtain more crack cocaine for sale. The confidential informant provided a description of the vehicle–including license plate and registration–in which Carter and Holliday were traveling.

The law enforcement officials followed the vehicle to a Red Roof Inn and observed Carter and Holliday enter room #119. They monitored the room for some period of time until Holliday left the room, returned to his vehicle, and began exiting the parking lot. The officers executed a traffic stop, detected the odor of marijuana emanating from the vehicle, and observed marijuana in the vehicle. They arrested Holliday and a search was undertaken incident to his arrest, which recovered seventeen grams of crack cocaine.

The law enforcement officials, thereafter, approached room #119. They knocked on the door twice, each time indicating that they were housekeeping personnel. In response to these first two entreaties, Carter did not open the door. The three

police officers at an airport who asked to examine his ticket and identification and then to look into the bag he was carrying, responded, "you've got the badge, I guess you can." 193 F.3d at 383. We recognized that there was no overt evidence of duress or coercion, that the officers wore plain clothes and did not brandish weapons, that the encounter occurred in a public place, that the parties spoke in conversational tones, that the defendant was cooperative, and that Worley's intelligence and age suggested the ability to freely consent. *Id.* at 386. Nevertheless, we found that the government had still failed to demonstrate that Worley's response "was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request." *Id.*

In this case, it is reasonable to conclude that Carter was surprised when he opened the motel room door. At first, he refused to open the door at all, and then appears to have responded to the call at the door that "housekeeping" sought entry. After opening the door, he was then confronted with multiple police officers, some of whom were wearing vests saying "police." When Detective Hart announced a desire to enter the room, I would not find on this record that Carter's act of saying nothing, but merely backing up a few steps, amounted to "an unequivocal statement of free and voluntary consent," "uncontaminated by duress, coercion, or trickery," the majority's contrary conclusion notwithstanding.

For these reasons, I believe that the search and seizure in this case violated the Fourth Amendment and that Carter's motion to suppress should have been granted by the lower court. I therefore must respectfully dissent from the opinion and judgment affirming the denial of that motion.

officers, two in civilian clothes wearing police vests (with no firearms visible), and the third in a police uniform (with a holstered revolver), knocked on the door two more times but did not represent (or misrepresent) who they were.

After the fourth knock, Carter opened the door.[1] The officers identified themselves and detected the odor of marijuana coming from inside the room and observed and instantly identified a marijuana "blunt" in an ashtray on a table adjacent to the door.

One of the officers, Detective Hart, explained in his testimony that a marijuana "blunt" results from packing marijuana leaves inside a hollowed out cigar. The dissent, in one of three efforts to support a tenable argument to discredit the panel majority's characterization of Detective Hart's positive observations, has misrepresented the officer's testimony. However, the true meaning of the detective's testimony is patently obvious from the record. In its footnote 1, the dissent draws from the transcript record the following comments from officer Hart:

Q.  From the outside it looks like a regular cigar?

A.  Yes.

Q.  Okay. So if I [cross-examining counsel] am looking across – if one was sitting on the table over there, it might very well be filled with marijuana, but it would look like a regular cigar?

A.  That's correct.

---

[1]The dissent indicates that Carter responded to the false housekeeping call. However, as the testimony before the lower court reflected, the officers knocked two additional times after having indicated they were housekeeping. In addition, contrary to the dissent's claim, each of the officers had identifying clothing which made clear they were police officers. Moreover, the officers verbally identified themselves when Carter opened the door.

The dissent has convoluted detective Hart's precise observations by omitting his remaining statements regarding the distinctive appearance of the "blunt," testimony *directly pertinent* to prove probable cause to support the plain view seizure:

A.  Yes.  Based on the odor that I smelled and what I was observing, I went in to obtain that item.

Q.  And you went directly to this what appeared to be a cigar?

A.  That's correct.

Q.  Okay.  And you examined the cigar?

A.  Yeah.  I picked it up, saw the green leafy substance in the end.  It was – the closer I got the more I could smell the smell of the burnt marijuana.  I then was informing Detective Carter that, you know, we had marijuana.

*    *    *

Q:  And could you tell the length of this blunt?  In other words, when you were standing at the door, could you tell from there whether or not it had been burned at all?

A:  Yes.  This was the end result.  This was just like a cigarette, a marijuana cigarette, a joint.  When it gets down to the very small part that you can't hold anymore, it was about to the point where it had gotten so small it had been burnt down so much that it had been set down.

Q:  Okay.  So it is not like a new cigar that hadn't been–

A:  No, it wasn't a brand new one.  It had substantial burning on it if, in fact, in the beginning it had been a full size one.

---

[P]lain view *alone* is never enough to justify the warrantless seizure of evidence.  This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause.  But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971).  An officer's plain view of contraband inside a dwelling-place provides grounds for procuring a warrant, not for entering the dwelling and seizing it.  *See United States v. Taylor,* 248 F.3d 506, 513 (6th Cir. 2001) ("Once an officer has probable cause to believe contraband is present, he must obtain a search warrant before he can proceed to search the premises."); *Chaar*, 137 F.3d at 363 n.6 (precluding plain view of contraband from excusing warrantless search of storage locker, as "the officers had no right of access to the storage lockers without a warrant").

Finally, on the question of consent to search, the district court found that the defendant voluntarily opened the door and consented to the search by stepping back from the door, concluding "that there was at least acquiescence." *Id.* at 28, J.A. at 82.  But consent to a search exists only when it is "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999); s*ee also United States v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981) ("the consent [must be] uncontaminated by duress, coercion, or trickery.").  The grant of permission to search must exhibit "more than the mere expression of approval to the search." *Jones*, 641 F.2d at 429.  For instance, in *United States v. Worley*, we held that the government failed to establish consent to search when the defendant, confronted by two

Burger, C.J.) (holding that police impoundment of premises until warrant arrived after arresting occupants was not unreasonable); *United States v. Crespo de Llano*, 838 F.2d 1006, 1016 (9th Cir. 1987) (same). The majority rejects this option, stating that Carter "could have closed the door denying officers entry, leaving the officers powerless to pursue their effort to protect the physical evidence that Carter would then destroy." Of course, if Carter were able to do that, the premises would not have been secured or impounded, since impoundment may include restraining the occupant, *McArthur*, 531 U.S. at 332-33, and an exigency might have thus emerged. But that is beside the point, because the proper focus, I believe, is not at the point in time when Carter opened the door. Rather, as noted above, we should be evaluating the officers' decision to forego the warrant process when they decided to gain entry into private quarters in which contraband would likely be found, and an exigency would likely arise from their own making. One might legitimately inquire: is it reasonable to find that although the officers had time to remain in their vehicle and summon a narcotics-detecting dog and handler, they were too pressed by circumstances to contact a magistrate for a warrant?

The government in this case also briefed a fall-back position urging that the plain view doctrine justifies the warrantless seizure of the "blunt." However, of the four elements required to establish that exception — "(1) the item must be in plain view; (2) the item's incriminating nature must be immediately apparent; (3) the item must be viewed by an officer lawfully located in a place from which the object can be seen; and (4) the item must be seized by an officer who has a lawful right of access to the object itself," *United States v. Chaar,* 137 F.3d 359, 363 n.6 (6th Cir. 1998) — the last element presents a problem. "[E]ven where the object is contraband, [the Supreme] [C]ourt has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure." *Horton v. California,* 496 U.S. 128, 137 n.7 (1990); *see also United States v. Jenkins,* 124 F.3d 768, 774 (6th Cir. 1997). As Justice Stewart explained,

*Without threat or use of force, coercion, or trickery*, the officers asked Carter's permission to enter the apartment and discuss the situation. In response, Carter stepped back and cleared a path for the officers to enter. Officer Hart immediately proceeded to the table, picked up the "blunt," and quickly confirmed his initial belief that it contained marijuana residue.[2] The officers then placed Carter under arrest. Incident to that arrest, a search was conducted of

---

[2] The dissent contends that "whether a cigar is truly a 'blunt' can usually only be confirmed by close examination." However, the accuracy of that statement is of no consequence. As noted elsewhere in the text, the plain view exception to the warrant requirement of the Fourth Amendment requires only *probable cause* – not absolute certainty–to believe that the confiscated "blunt" was not a cigar. *See United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997). With his six years of experience as a narcotics officer, Officer Hart had probable cause to believe that the cigar was in fact a marijuana blunt because he smelled the odor of marijuana, knew that Holliday had recently left the room, and had, moments earlier, found marijuana in Holliday's vehicle. Officer Hart's entry into the hotel room confirmed with certainty his initial reasonable observation and conclusion that the item was contraband.

The dissent has cited *United States v. McLevain*, 310 F.3d 434, 2002 WL 31499628 (6th Cir. Nov. 12, 2002), to support its position in opposition to Officer Hart's observations and resultant action. Yet, on its face, *McLevain* is factually distinguishable from the instant action.

*McLevain* is, however, significant as legal precedent, in that it confirms the majority's position that, "the 'instrinsic nature' or appearance of the seized object gives *probable cause* to believe that it is associated with criminal activity,"and that "the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature." *Id* at 441(emphasis added) (*citing United States v. Beal*, 810 F.2d 574, 576-577 (6th Cir. 1987)

Significantly, *McLevain* continues to declare "that the Supreme Court does not require that officers *know* that evidence is contraband. Instead, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the *belief*' that certain items *may* be contraband or stolen property or *useful* as evidence of a crime.'" *Id.* at 441. (emphasis added) (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed. 2d 502 (1983) (citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.CT. 280, 69 L.Ed. 543 (1925))).

Carter's person which resulted in twelve grams of crack cocaine and $1,749.00 in cash being recovered.

On May 4, 2000, a federal grand jury indicted Carter and Holliday on five counts of cocaine trafficking in violation of 21 U.S.C. § 841(a)(1). On November 6, 2000, after conducting an evidentiary hearing, the district court declined Carter's invitation to suppress the evidence found in the hotel room and on his person. On December 5, 2000, Carter conditionally pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), reserving the right to challenge his conviction for failure of the trial court to suppress physical evidence seized without a search warrant. On March 5, 2001, following preparation of a presentence investigation report, the district court sentenced Carter to sixty months in prison and sixty months of supervised release. On March 9, 2001, Carter timely filed his notice of appeal.

This court reviews "a district court's factual findings regarding motions to suppress for clear error and its legal conclusions *de novo*." *United States v. Blair*, 214 F.3d 690, 696 (6th Cir.) (citation omitted), *cert. denied*, 121 S.Ct. 191 (2000). In cases where a district court denies the defendant's motion to suppress evidence, the appellate court "must consider evidence in the light most favorable to the government." *United States v. Wellman*, 185 F.3d 651, 654-55 (6th Cir. 1999) (citation omitted).

The Fourth Amendment declares that "[t]he right of the people to be secure in their persons, houses and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are

door suggesting that contraband would be destroyed within the time necessary to obtain a search warrant, let alone that the destruction of evidence was likely imminent. The record discloses no urgency requiring entry into the motel room after Holliday's arrest, nor is there any suggestion that Carter was aware of police presence at that point. There is no reason that I can discern which prevented the police from taking their request to a judicial officer to request a search warrant before they attempted to gain access to the motel room.

Of course, there is no requirement that the police obtain a search warrant before knocking on the door. But having chosen that course of action, which obviously would result in the occupant learning of the presence of law enforcement officers, the police may not bootstrap circumstances of their own making into an exigency that avoids the Fourth Amendment's warrant clause.[2]

Even after Carter opened the door, there is nothing in this record which suggests that the premises could not have been impounded, Carter ordered to remain in view, and a warrant obtained either in person or by telephone. *See Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (holding that police impoundment of residence that restrained defendant from entering until warrant could be obtained was proper); *Segura v. United States*, 468 U.S. 796, 810 (1984) (opinion of

---

[2] The majority relies on *United States v. Jones*, 239 F.3d 716 (5th Cir. 2001) for the proposition that an officer does not act improperly when he or she "discerns facts providing exigent circumstances in the course of a consensual encounter" and acts accordingly. *Ante* at ___. What the majority does not disclose is that the reason the *Jones* court reached that conclusion was because the officers in that case *did not have probable cause to secure a search warrant* before approaching the door and seeing the firearm that they then decided to seize. *Id.* at 721. In that situation, the Fifth Circuit found that a "knock and talk" investigative approach was entirely appropriate. *Id.* at 720. The *Jones* court explicitly distinguished those facts from *Munoz-Guerra* and its decision in *United States v. Richard*, 994 F.2d 244 (5th Cir. 1993). In the latter case, the Fifth Circuit "affirmed the trial court's finding that officers created the exigent circumstances by announcing their presence when they could have easily waited for a search warrant." *Jones*, 239 F.3d at 721.

they saw a van arrive, two occupants entered the condominium, and they left a short time later carrying a briefcase. After the van left, agents approached and observed the butt of a large marijuana cigarette on the sill of a ground floor window, and a bag containing white powder on the floor. One of the agents then knocked on the door, and when the defendant responded, he was ordered to put his hands on the glass door panes. The defendant said the door was locked and he had to leave to retrieve a key, whereupon the agents kicked in the door, and seized the contraband. The lower court had sustained the warrantless search on the basis of the plain view doctrine coupled with exigent circumstances. On appeal, the court viewed the circumstances more broadly.

> Were we to confine our attention to the D.E.A. agents' predicament when Munoz-Guerra (a suspected armed drug-dealer) left them standing at the patio door, purportedly to retrieve a key from an adjoining room, we would dispense with the requirement of a warrant and affirm the district court's denial of Munoz-Guerra's motion to suppress. Our attention, however, is not so confined.

*Id.* at 297-98. The court observed that once the agents chose to approach the premises and knock on the door, alerting the occupants to their presence, "[w]arrantless entry was . . . a foregone conclusion." *Id.* at 298. "The question before this court, then, is whether exigent circumstances justified the agents' initial decision to approach the patio door." *Id.* Finding none, the court found the search unconstitutional.

In *United States v. Radka,* 904 F.2d 357 (6th Cir. 1990), we identified two components to an exigent circumstance analysis when the exigency is the likely destruction of evidence within the time required to procure a search warrant: "(1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that the loss or destruction of evidence is imminent." *Id.* at 362. Although there is no problem with the first prong of that test here, there is no evidence in this case before the officers knocked on the

presumptively unreasonable." *Id.* at 586. Nevertheless, "[t]he law is well settled that a warrantless entry will be upheld when the circumstances then extant were such as to lead a person of reasonable caution to conclude that [the] evidence would probably be destroyed within the time necessary to obtain a search warrant." *United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990) (citing *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973)).[3]

Moreover, if, during an initial intrusion, law enforcement officials plainly view incriminating evidence, it may be admitted into evidence pursuant to the plain view doctrine. *See United States v. Taylor*, 248 F.3d 506, 512 (6th Cir. 2001); *see also Horton v. California*, 496 U.S. 128, 135 (1990) ("Where the initial intrusion which brings the police within plain view of ... an [incriminating] article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate."). "The plain view exception to the warrant requirement applies when (1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed, (2) the item is in plain view, and (3) the incriminating character of the evidence is immediately apparent." *Id.* (citation omitted). "The standard does not demand an unduly high degree of certainty; rather, a plain view seizure is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997) (internal quotations omitted).

---

[3]Relying upon *Radka*, the dissent advances the incongruent conclusion that the likelihood of the imminent destruction of evidence, in the case *sub judice*, was equivalent to the improbable destruction of the contraband in *Munoz-Guerra* and *Vega*. That comparison was, to say the least, insignificant. The dissent has insisted that the single marijuana "blunt" here, which was but a 'toilet flush' away from destruction, was just as rapidly-indisposable as the 300 pounds of marijuana in Munoz-Guerra's possession and the four buckets of marijuana at Vega's house. Surely, an analysis, under *Radka*, of whether the destruction of evidence is imminent requires a reasonable sense of proportion, which the dissent seems to have entirely abandoned in its comparisons.

In the instant case, Officer Hart's seizure of the "blunt," which was validated as within the embrace of the "plain view" doctrine, furnished the exigent circumstances which justified the officers' warrantless entry into motel room #119 occupied by the petitioner. When Carter opened the door to his motel room, it is undisputed that the officers, while in the public area of the motel, instantly viewed and recognized a spent marijuana "blunt" resting on a table adjacent to the door. Had the officers withdrawn to seek a search warrant from a judicial authority, there is little doubt that Carter would have disposed of the "blunt."[4] *Cf. United States v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) (finding the probability of destruction of evidence to be "especially [great] in the case of an easily disposable substance like drugs").

Here again, Carter's reliance on *Johnson v. United States*, 333 U.S. 10 (1948), is also misplaced. In *Johnson*, the officers detected the odor of opium and demanded to search the hotel room. The *Johnson* court noted that the fumes "were not capable at any time of being reduced to possession for presentation to court," *id*. at 15, and determined that no

---

[4] The dissent's reliance on *Illinois v. McArthur*, 531 U.S. 326 (2001), avoids the central distinction that, in *McArthur*, police restrained the defendant *outside* his home, preventing re-entry, while the search warrant arrived. This "considerably less intrusive" measure simply did not apply in the instant case, where Carter remained *inside* the hotel room. *McArthur*, 531 U.S. at 336. Additionally, the dissent misconstrues this court's determination in *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001). *Taylor* called for a warrant *prior* to a premises search, but not to conduct a limited protective sweep to ensure police safety. These *issues simply were not at play* in the case *sub judice*. Even so, *Taylor* emphasized that when evidence is likely to be removed or destroyed, as in the instant case, "the warrant requirement may be excused altogether." *Taylor*, 248 F.3d at 513, fn. 2 (emphasis added) (*citing Schmerber v. California*, 384 U.S. 757 (1966) (explaining that the presence of exigent circumstances excuses the warrant requirement). Moreover, in *Taylor*, this circuit concluded that the officers were justified in seizing a stem of marijuana that rested in plain view from their legitimate vantage and which they immediately recognized. The court noted that it was the "incriminating character" of the marijuana stem that justified its seizure. *Taylor*, 248 F.3d at 512.

---

parked vehicle matching the description, observed two men enter it, and followed it to a residence, which they placed under surveillance. Although they had no warrant, the police decided to attempt to secure consent to enter the house and surrounded it. Officers then knocked and identified themselves, whereupon one of the men attempted to flee and was arrested. Other officers then entered the house through the door opened by the fleeing occupant and found two others inside attempting to hide. The officers also smelled marijuana, and an ensuing search produced "four buckets of marihuana." *Id.* at 794. The government attempted to justify the warrantless search on the basis of exigent circumstances, arguing that "at the moment [the officer] decided to enter the house there existed the danger that the occupants of the house might dispose of any illegal substances therein." *Id.* at 798. The court rejected that argument, holding that the proper time to evaluate whether an exigency existed was before the police precipitated contact with the suspects. None existed at that time. Rather,

> without justification, [the police] abandoned their secure surveillance positions and took action they believed might give the suspects cause and opportunity to retrieve the weapons or dispose of the drugs. Their decision to take this action was not justified by an absence of time to secure a warrant or by any other reasonable predicate.

*Id.* at 800.

In concluding that "[t]he police may not . . . rely on . . . circumstances of their own making to support the proposition that the warrant requirement should be excused," *id.*, the *Vega* court relied heavily upon *United States v. Munoz-Guerra*, 788 F.2d 295 (5th Cir. 1986), a case remarkably similar to the case *sub judice*. There, police received a tip that large quantities of drugs were stored in an empty condominium, and that the occupant was armed. Police proceeded to the premises and, upon determining the that the information was reliable, contacted Drug Enforcement Agency agents for assistance. Agents arrived and set up surveillance. After twenty minutes,

the odor of marijuana and what appeared to be a blunt, he had decided to arrest the defendant for marijuana possession. J.A. at 79.

The majority correctly notes that warrantless searches are presumptively unreasonable under the Fourth Amendment. *See Payton v. New York*, 445 U.S. 573, 585-86 (1980). The Supreme Court has consistently held that absent a warrant, probable cause alone will not suffice to sanction an entry into a dwelling to execute a search or arrest. *Kirk v. Louisiana*, 122 S. Ct. 2458, 2458-59 (2002) (per curiam). Probable cause must be accompanied by exigent circumstances or some other exception to the warrant requirement in order to make the search constitutional. *Id.* at 2459; *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000).

Exigent circumstances exist when (1) the police are in hot pursuit of a fleeing suspect; (2) where a suspect represents an immediate threat to the arresting officers or the public; or (3) where immediate police action is needed to prevent the destruction of vital evidence or to thwart the escape of known criminals. *United States v. Haddix*, 239 F.3d 766, 767 (6th Cir. 2001). The majority concludes that when Detective Hart saw the "blunt" through the open door and smelled burnt marijuana, as one might have predicted given Holliday's prior statement acknowledging smoking marijuana in the motel room, exigent circumstances arose because Carter could have disposed of the "blunt" during the time it would have taken to obtain a warrant. True enough, but that rationale, which narrows its focus to the moment the door was opened, would justify warrantless home entry any time the police suspect the presence of drugs in a home and then choose to alert the occupants to their presence.

I favor the analysis used by the Fifth Circuit in *United States v. Vega*, 221 F.3d 789 (5th Cir. 2000). There, the police received a tip from FBI agents, generated through an informant, that three Cuban men carrying a substantial amount of cash to buy drugs would be passing through town in a dark sedan with Florida license plates. Agents found a

admissible physical evidence was therefore threatened with destruction. In the case *sub judice*, however, an actual physical item–a used marijuana "blunt"–was the object of the search and seizure. As such, the officers reasonably concluded that the "blunt" could be disposed of and would no longer be available upon their return with a warrant.

The dissent depends upon *United States v. Vega*, 221 F.3d 789 (5th Cir. 2000), to support the proposition that law enforcement officers may not create exigent circumstances in an effort to avoid the warrant requirement of the Fourth Amendment.[5] However, *Vega* presented a materially different factual situation.[6] In *Vega,* the officers had no

---

[5] While *Vega* addresses the proposition that the government's own action or inaction cannot be the likely cause of an exigent circumstance, courts look to the *reasonableness* of the officer's investigative tactics preceding the warrantless entry to determine whether exigent circumstances were manufactured. *See, U.S. v. Elkins*, 300 F.3d 638, 655 (6th Cir. 2002) ("As long as police refrain from unreasonably tipping off suspects, they may use normal investigative and law enforcement measures in the vicinity of a suspected crime location without forfeiting their ability to perform a warrantless search to secure evidence if exigent circumstances arise."); *Ewolski v. City of Brunswick*, 287 F.3d 492, 504 (6th Cir. 2002) ("[T]he created-exigency cases have typically required some showing of deliberate conduct on the part of the police evincing an effort intentionally to evade the warrant requirement.") It is beyond cavil that the officers, in the instant case, acted reasonably in the furtherance of a criminal investigation when, without any show of force or coercion, they announced their presence, entered motel room #119 occupied by the defendant pursuant to the "plain view" doctrine, limited their seizure to the "blunt" in plain view, and confined their search to Carter's person incident to his arrest.

[6] When, as in the case *sub judice*, an officer discerns facts providing exigent circumstances in the course of a consensual encounter, courts refuse to find that the officer impermissibly created or "bootstrapped" the exigent circumstances. *See United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001)(distinguishing *Vega* and denying suppression based on the officer's reasonable conduct) The salient facts in *Jones* parallel the instant case. The officers in *Jones* had responded to complaints of drug sales in a specific apartment. Upon approaching the apartment's screen door from a common area, one officer knocked and announced his presence. A handgun rested on a table in plain view to the officer in the

probable cause, but instead acted on an anonymous tip that the men in question were drug traffickers. Before initiating the search, the officers had not "seen any signs that these as yet unknown men possessed any drugs, money or weapons." *Id.* at 794. In fact, the officers detected the odor of marijuana only after they entered the residence. In the case before the court, as the dissent concedes, the officers had probable cause to search the hotel room because the officers had observed Carter and Holliday leave a crack house and had arrested Holliday upon his attempt to return to that crack house with additional drugs. Most importantly, when Carter opened the door to motel room #119, Officer Hart immediately detected the odor of marijuana and instantly observed and recognized a blunt in plain view from *outside the hotel room*. Had Officer Hart left the premises, Carter would surely have destroyed the blunt. Moreover, if the officers had *ex ante* planned to manufacture exigent circumstances to justify their search, surely they would have searched the entire hotel room. In fact, no such search was undertaken. Officer Hart viewed and recognized a blunt in plain view from outside the hotel room and then seized it due to his reasonable fear that it

---

doorway. The defendant unlocked the screen door and began speaking with the police in the common area, whereupon the officer entered the apartment and secured the gun on the table  After admitting to the officer that he had been convicted of a felony, the defendant was placed under arrest. The court found the officer's actions reasonable in approaching the apartment to investigate complaints of criminal activity. Significantly, the court found that by leaving a handgun in plain view through the screen door to anyone standing outside, the defendant had, *himself*, caused the exigent circumstances. In *Jones*, as in the case *sub judice*, the officers' reasonable approach to the premises to investigate criminal activity, along with their observation, after they had announced their presence, of felonious material in plain view from outside the premises and likely to either be destroyed or present a safety concern, combined to create an exigent circumstance not of the officers' making. As in *Jones*, and in contrast to *Munoz-Guerra*, upon which the dissent relies, the officers in the instant case did not know that Carter had a 'blunt' in plain view until *after* they were directly in front of the open motel door.

the door and falsely called out that they were motel housekeeping personnel. J.A. at 74. Detective Edward A. Hart testified that when the defendant eventually opened the door after two more knocks (but without the police officers ever identifying themselves as such), Hart immediately recognized the smell of burnt marijuana and spotted the butt of a cigar that he thought might have been hollowed out to contain marijuana, otherwise known as a "blunt." J.A. at 67.[1] Detective Hart also noticed that the defendant was alone in the hotel room. J.A. at 73.

The police, consisting of three presumably armed officers wearing official identification, requested permission to enter the motel room. *Id.* The defendant responded to this show of force by stepping backward from the door, and did not respond verbally. J.A. at 76. Detective Hart then walked past the defendant to examine the cigar, which indeed turned out to be a mostly-spent "blunt." *Id.* The defendant was promptly arrested for possession of marijuana, and a search of his person revealed twelve grams of crack cocaine and $1949 in cash. J.A. at 67. Detective Hart stated that upon smelling

---

[1] For some reason, the majority contends that upon the door being opened, "officers" "instantly identified a marijuana 'blunt' in an ashtray on a table." *Ante* at __. Actually, Detective Hart testified that he smelled burnt marijuana when Carter opened the motel room door. Then he said: "From the door frame I could look in, and there was a small table toward – near the door, between the door and the wall. On that I saw a – what *I thought was a blunt* – it's a hollowed out cigar that marijuana is then put into. J.A. at 67. Detective Hart later acknowledged, however, that whether a cigar is truly a "blunt" can usually only be verified by close examination. He said: "Q. From the outside it looks like a regular cigar? A. Yes. Q. Okay. So if I am looking across – if one was sitting on the table over there, it might very well be filled with marijuana, but it would look like a regular cigar? A. That's correct." J.A. at 75-76. This court recently held that an item's status as evidence or contraband must be "immediately apparent" to allow seizure under the "plain view" exception to the warrant requirement. *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002) ("[W]hen an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating.").

---

**DISSENT**

---

LAWSON, District Judge (dissenting).  The trial court denied the defendant's motion to suppress evidence on the basis that he consented to the entry and search of his hotel room.  The majority did not address that issue, choosing instead an alternate ground for upholding the search.  I conclude that consent was not properly established by the government or given by the defendant in this case.  Moreover, because I cannot find that exigent circumstances existed excusing the failure to obtain a search warrant, I must respectfully dissent from the holding that the search and seizure of evidence in this case did not violate the Fourth Amendment.

As the majority notes, law enforcement officials, pursuing a tip from a confidential informant, set up surveillance at the motel in which the defendant was eventually found.  I also find it significant, however, that the officers took the time to summon a narcotic drug dog and handler to the scene.  J.A. at 65.  After an hour and a half, the police saw the defendant's compatriot, Calvin Holliday, drive away from the motel parking lot.  They stopped Holliday's vehicle, detected a strong odor of marijuana within, and also noticed marijuana inside the vehicle.  J.A. at 66.  Holliday was arrested for illegal possession of marijuana, and then turned over seventeen grams of crack cocaine which had been hidden in his clothes.  *Id.*  Holliday also informed the officers that he had been smoking marijuana in the motel room.  J.A. at 67.

At this point, given the information that Carter and Holliday were returning in their car to a nearby motel to resupply their crack cocaine inventory, coupled with the discovery of cocaine on Holliday's person after having departed the motel, the police had probable cause to believe that more contraband would be found in the motel room.  However, they made no effort to obtain a search warrant, but instead proceeded to the motel, where they twice knocked on

would be destroyed if he vacated the premises.[7]  As Chief Justice Burger noted in *Segura v. United States*, 796 U.S. 796 (1984), "[a] seizure affects only the person's possessory interests; a search affects a person's privacy interests."  *Id.* at 806.

The dissent's additional reliance on *Vega's* predecessor, *United States v. Munoz-Guerra*,788 F.2d 295 (5th Cir. 1986), is equally misplaced.  In characterizing *Munoz-Guerra* as "remarkably similar" to the instant case, the dissent fails to reveal that *Munoz-Guerra never reaches the issue of the plain view" exception*, and derives its conclusions on exigent circumstances from facts *remarkably dissimilar* from the instant case.  Without reason, the officers in *Munoz-Guerra* ended their surveillance of a condominium housing Munoz-Guerra and 300 pounds of marijuana, by scaling a fence to enter the back yard.  *Prior* to knocking on Munoz-Guerra's door they viewed a marijuana cigarette through the kitchen window.  They then kicked in the condominium's glass door, after defendant refused them entry by ostensibly going in search of a door key.  The officers then searched the premises, finding the 300 pound stash of marijuana.  *Id.* at 297.  By comparison, in the case *sub judice*, the officers gained admittance to Carter's motel room by virtue of his consent after he responded to their announced knock.  The officers did not effect a search of Carter's motel room, but rather, seized a partially spent 'blunt' in plain view from the doorway *after* Carter voluntarily opened the door.  In the case at bar, the exigent circumstance supporting the warrantless seizure was the probable destruction of the partially spent 'blunt,' which was but a 'toilet flush' away from destruction, a circumstance

---

[7]Citing *Illinois v. McArthur*, 531 U.S. 326 (2001), and *Segura v. United States*, 468 U.S. 796, 810 (1984), the dissent contends that the officers could have impounded the premises and ordered Carter to remain in view while a search warrant was obtained.  This contention is unpersuasive.  Carter could have closed the door, denying the officers entry, leaving the officers powerless to pursue their effort to protect the physical evidence that Carter would then destroy.  Moreover, the officers never engaged in a search of the hotel room beyond the seizure of the blunt.

materially different from the presumed imminent destruction of the 300 pounds of marijuana in *Munoz-Guerra*. Moreover, *Munoz-Guerra* concedes that had there been reason to believe that the inhabitants of the condominium thought they were under surveillance, a warrantless entry would have been justified on an exigent theory. Id. at 298. In the instant case, it was not unreasonable for the officers to end their surveillance, in contrast to *Munoz-Guerra*, and approach Carter's motel room immediately subsequent to the valid arrest of his confederate, Holliday, *in the motel parking lot*, knowing the co-defendants had traveled from Detroit together, that Holliday was going out to resupply the crack house, and that Carter would expect Holliday's imminent return. The record is replete with evidence that the officers were well aware that co-defendants worked closely and in tandem.

Citing to no legal authority, the dissent speculates that this court's "rationale would justify warrantless home entry any time the police suspect the presence of drugs in a home and choose to alert the occupants to their presence." The dissent's fear is unfounded. Had Officer Hart not seen the blunt from outside the hotel room door, the matter would have been governed by *Johnson* and any evidence gained from the search would have been suppressed. Officer Hart simply could not have known that a blunt would be in plain view before he and the other officers attempted to obtain consent for a search of the hotel room.[8]

---

[8] While the dissent concludes that Carter did not consent to a search of his hotel room, this court, in relying upon the "plain view" doctrine for its final disposition, is not required to decide the "consent to search issue." Nevertheless, it is noted, the dissent's reliance on *United States v. Worley*, 193 F.3d 380 (6th Cir. 1999), and *United States v. Jones*, 641 F.2d 425 (6th Cir. 1981), is misplaced. On clear error review, the *Worley* court affirmed the district court's granting of Worley's motion to suppress, deciding that Worley's response to the officers' request to search his belongings–"you've got the badge, I guess you can"–implied that Worley was coerced because he had no alternative. In the instant case, Carter made no statement nor took any action which implied that he was acting reluctantly or under duress. In *Jones*, the court determined that

---

For the foregoing reasons, the district court's judgment is **AFFIRMED**.

---

the defendant's girlfriend's consent to a search of her residence was coerced because "[t]he overpowering police presence, the kicking and banging on the door, the assertion of lawful authority, all suggest[ed] that Sarah Howard had no real choice other than to let the police search." *Jones*, 641 F.2d at 429. The record in the instant case discloses no such "overpowering" police conduct. It is also useful to note that other courts faced with a similar factual scenario have found consent. *See United States v. Griffin*, 530 F.2d 739, 742-44 (7th Cir. 1976) ("The second time the officers requested entry, Russell did not say 'no,' nor did he shut the door. Instead of repeating his earlier response, Russell stepped back, leaving the door open, and led the officers into the apartment."); *Robbins v. MacKenzie*, 364 F.2d 45, 49 (1st Cir. 1966) ("An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest, and would be so considered by the courts; the householder would not be permitted to base a claim of trespass upon the assertion that in his heart he did not wish to admit his caller. Similarly, the fourth amendment, while it requires that a policeman seeking admittance to a private residence must fully regard the rights of the householder, does not require him to be clairvoyant."), *cert. denied*, 385 U.S. 913 (1966).